UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| NANCY KUHLMEY, )<br>Personal Representative of the Estate )<br>of John Edward Brown, II, Deceased, )<br>                                 )<br>        Plaintiff, )<br>                                 )<br>        v. )<br>                                 )<br>THE CITY OF HAMMOND, et al., )<br>                                 )<br>        Defendants. ) | No. 2:16 CV 56 |

## OPINION and ORDER

Plaintiff Nancy Kuhlmey, as personal representative of the Estate of John Edward Brown, II, deceased, ("plaintiff") brings this suit following the death of John Edward Brown, II, from a fatal gunshot wound. (DE # 1.) Plaintiff has sued the City of Hammond ("the City"), Hammond Chief of Police Brian Miller (solely in his official capacity as Chief of Police for the Hammond Police Department) ("Miller"), and four unnamed police officers from the Hammond Police Department referred to in the complaint as John Doe, Jack Doe, Jane Doe, and Janet Doe (the "Doe Defendants"). (DE # 1 at 1.)

The matter is now before the court on two motions for summary judgment filed by the defendants. Defendants City of Hammond and Brian Miller (the "City Defendants") filed a joint motion for summary judgment (DE # 33), and the Doe Defendants filed a joint motion for summary judgment (DE # 35). Plaintiff has responded to both pending motions. (DE ## 42, 43, 44, 45.) Replies were filed by both

the City Defendants (DE # 48) and the Doe Defendants (DE # 49). These motions are fully briefed and are ripe for ruling.

I.  BACKGROUND[1]

On February 16, 2014, the Hammond Police Department received a call that a female was stabbed in the mouth by her husband. (DE # 42-2 at 2.) Officers Carmen Ramirez and Michael Elkmann arrived at the scene. (*Id.* at 3.) Elkmann says he observed John E. Brown, II, holding two large knives. (DE # 27-6 at 10.) Plaintiff, citing a witness, asserts that Brown had only one knife. (DE # 42-6 at 30–31.)

Elkmann says that Brown began moving towards him, while still holding the knives. (DE # 37-6 at 28, 31.) Another witness states that Brown moved towards the officer "a step or two." (DE # 42-7 at 21.) Elkmann then discharged his firearm three times at Brown. (DE # 37-6 at 15.) Brown received two gunshot wounds from the shooting. (DE # 42-3 at 2.) As a result of the shooting, John E. Brown, II, was pronounced dead on February 16, 2014 at 9:46 p.m. (*Id.*)

Based on these events, plaintiff filed a complaint on February 2, 2016, against the City of Hammond, Miller, and the four Doe Defendants. (DE # 1.) Plaintiff brings three claims: (1) unreasonable seizure and excessive force, pursuant to 42 U.S.C. § 1983, against the Doe Defendants in their individual and official capacities; (2) failure to train or supervise, pursuant to 42 U.S.C. § 1983, against the City and Miller; and (3) wrongful

---

[1] In the summary that follows, any unattributed facts are undisputed. This summary provides an overview. Additional relevant facts will be referred to in the analysis that follows.

2

death, pursuant to Indiana Code § 34-23-1-1, against the Does defendants in their individual and official capacities. (DE # 1 at 7–14.) Discovery has been completed in this case, and defendants have moved for summary judgment on all claims. The court will now address the pending motions.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56 requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). "[S]ummary judgment is appropriate—in fact, is mandated—where there are no disputed issues of material fact and the movant must prevail as a matter of law. In other words, the record must reveal that no reasonable jury could find for the non-moving party." *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.,* 16 F.3d 832, 836 (7th Cir. 1994) (internal citations and quotation marks omitted).

The moving party bears the initial burden of demonstrating that these requirements have been met. *Carmichael v. Village of Palatine, Ill.,* 605 F.3d 451, 460 (7th Cir. 2010). "[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex,* 477 U.S. at 325. Once the moving party has met his burden, the non-moving party must identify specific facts establishing that there is a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986);

*Palmer v. Marion County,* 327 F.3d 588, 595 (7th Cir. 2003) (citing *Celotex,* 477 U.S. at 324). In doing so, the non-moving party cannot rest on the pleadings alone, but must present fresh proof in support of its position. *Anderson,* 477 U.S. at 248; *Donovan v. City of Milwaukee,* 17 F.3d 944, 947 (7th Cir. 1994). In viewing the facts presented on a motion for summary judgment, the court must construe all facts in a light most favorable to the non-moving party and draw all reasonable inferences in favor of that party. *Chmiel v. JC Penney Life Ins. Co.,* 158 F.3d 966 (7th Cir. 1998).

**III.    DISCUSSION**

    *A.    Statement of Genuine Disputes*

First, both sets of defendants assert that the court should enter summary judgment because plaintiff has failed to comply with Northern District of Indiana Local Rule 56-1(b)(2) in her response to the motions for summary judgment. (*See* DE ## 48 at 1; 49 at 1.) That rule states that a response brief to a motion for summary judgment—or its appendix—"must include a section labeled 'Statement of Genuine Disputes' that identifies the material facts that the party contends are genuinely disputed so as to make a trial necessary." N.D. Ind. L.R. 56-1(b)(2).

The defendants are correct that plaintiff has failed to include such a section in her response to the motions for summary judgment.[2] (*See* DE # 43.) However, she does include a "Statement of Facts" in the response. (*See* DE # 43 at 2–5.)

---

    [2] Plaintiff filed a single response brief to both motions for summary judgment, which appears on the docket as both docket entry number 43 and docket entry number 45.

Although plaintiff has not strictly complied with the local rules, this does not require the court to strike her factual statements. Rather, "it is clear that the decision whether to apply the rule strictly or to overlook any transgression is one left to the district court's discretion." *Stevo v. Frasor*, 662 F.3d 880, 887 (7th Cir. 2011) (affirming a district court's decision to consider a defendant's summary judgment motion although it did not comply strictly with all formal requirements of the local rule).

In the case at hand, plaintiff has presented a factual statement in her response brief which outlines the relevant facts of the case from her perspective and cites to the record in support of those facts. It may not be perfect compliance, but local rules are "not intended to provide a maze of technical traps to complicate and delay litigation without advancing merits." *Stevo*, 662 F.3d at 887. Therefore, the court will not grant summary judgment on this basis.

B.   *Unreasonable Seizure and Excessive Force*

Plaintiff brings her first claim under 42 U.S.C. § 1983 for unreasonable seizure and excessive force and for violations of the "Fourth, Fifth, Eighth, and Fourteenth Amendments." (DE # 1 at 7–10.) Plaintiff brings this claim against the Doe Defendants in both their individual capacities and their official capacities as agents of the City. (*See* DE # 1 at 14.)

The Doe Defendants move for summary judgment on all claims against them in their individual capacities. However, before they address the merits of this first claim,

the Doe Defendants move for summary judgment on the basis that plaintiff failed to identify any of them by name before the statute of limitations expired.

Plaintiff's § 1983 claim against the Doe Defendants accrued on February 16, 2014, on the date of the shooting. Plaintiff does not dispute this assertion. (*See* DE # 43.) Actions brought under § 1983 must be commenced within a period permitted by the forum state's personal injury statute of limitations. *Coopwood v. Lake Cnty. Cmty. Dev. Dep't*, 932 F.2d 677, 678–79 (7th Cir. 1991). In Indiana, there is a two-year statute of limitations governing actions for personal injury. Ind. Code § 34-11-2-4. Therefore, the statute of limitations in this case has expired.

A plaintiff cannot, "after the statute of limitations period, name as defendants individuals that were unidentified at the time of the original pleading." *Jackson v. Kotter*, 541 F.3d 688, 696 (7th Cir. 2008); *see also Gomez v. Randle*, 680 F.3d 859, 864 n.1 (7th Cir. 2012) ("Accordingly, once the statute of limitations period expires, [plaintiff] cannot amend his complaint to substitute a new party in the place of 'John Doe.'") According to the Seventh Circuit, "it is pointless to include lists of anonymous defendants in federal court; this type of placeholder does not open the door to relation back under [Federal Rule of Civil Procedure] 15, nor can it otherwise help the plaintiff." *Wudtke v. Davel*, 128 F.3d 1057, 1060 (7th Cir. 1997) (internal citations omitted).

Discovery has now closed in this matter, which means plaintiff has been given the opportunity to learn the names of the officers who were present at the scene of the shooting. Nevertheless, plaintiff has made no attempt to amend her pleading to name

any of the Doe Defendants. Even in plaintiff's response to the motion for summary judgment, she does not directly ask the court for leave to amend the complaint to name any of the Does. However, she does argue generally that Rule 15(c)(1)(C) of the Federal Rules of Civil Procedure allows for amendment and relation back where "the party to be brought in by amendment . . . received such notice of the action that it will not be prejudiced in defending on the merits; and . . . knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity."

In order for Rule 15(c)(1)(C) to apply, plaintiff must have made a mistake in determining the proper defendants' identities. But, the Seventh Circuit has repeatedly held that a "plaintiff's lack of knowledge about a defendant's identity is not a 'mistake' within the meaning of Federal Rule of Civil Procedure 15(c) such that the plaintiff could amend his complaint outside the statute of limitations period upon learning the defendant's identity." *Gomez*, 680 F.3d at 864 n.1; *see also Jackson*, 541 F.3d 688, 696 (7th Cir. 2008) ("Not knowing a defendant's name is not a mistake under Rule 15."); *Mihelic v. Will Cnty., Ill.*, 826 F. Supp. 2d 1104, 1115 (N.D. Ill. 2011) ("Establishing the existence of a mistake is a threshold requirement in a 15(c)(1) inquiry . . . .'" (quoting *King v. One Unknown Fed. Corr. Officer*, 201 F.3d 910, 914 (7th Cir. 2000))). This is true even if the unnamed defendants had knowledge that a lawsuit might be brought against them. *King*, 201 F.3d at 914 ("[W]e have emphasized that the mistake requirement is

independent from whether the purported substitute party knew that action would be brought against him.").

Plaintiff cites *Stewart v. Special Adm'r of the Estate of Mesrobian*, 559 Fed App'x. 543 (7th Cir. 2014), in support of her argument that Rule 15(c)(1)(C) applies to her case to allow relation back. But nothing in that decision runs counter to the Seventh Circuit holdings listed above which support the notion that a naming a John Doe is not a mistake under the Rule.

Accordingly, the statute of limitations bars plaintiff's claims against the individual officers. Therefore, summary judgment is appropriate in favor of the Doe Defendants and the claims against the Doe Defendants—in their individual capacities— are dismissed.

Additionally, as stated above, plaintiff also brought this first claim against the Doe Defendants in their *official* capacities. This official capacity claim is treated as a claim against the City. *See Kentucky v. Graham*, 473 U.S. 159, 165–66 (1986). However, as the City Defendants argue in their motion to dismiss, the City cannot be held liable on this claim under a theory of *respondeat superior*. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). A municipality is "not vicariously liable for the constitutional torts of their agents" and may only be held liable if the deprivation of the constitutional right is caused by their own decisions or policies. *Auriemma v. Rice*, 957 F.2d 397, 399 (7th Cir. 1992). Plaintiff's second claim, for failure to train or supervise, attempts to allege such a policy. (DE # 1 at 11.) However, plaintiff's first claim for unreasonable seizure and

8

excessive force does not refer to any municipal policy or custom, and so summary judgment is also appropriate on this claim in favor of the City Defendants, as well.

C. *Failure to Train or Supervise*

Plaintiff's second claim is for failure to train or supervise, under 42 U.S.C. § 1983, against the City and Miller in his official capacity. (DE # 1 at 11–13.) The claim against Miller in his official capacity is equivalent to the claim against the City. *See Kentucky v. Graham*, 473 U.S. 159, 165–66 (1986). Therefore, the court will dismiss the claim against Miller as redundant.

Next, for the City to be liable under § 1983, plaintiff must show either "(1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." *Roach v. City of Evansville*, 111 F.3d 544, 548 (7th Cir. 1997). To more specifically succeed on a failure-to-train claim, the plaintiff must show that "the City's employee violated his constitutional rights, that the City had a policy or custom of failing to train its employees, and that the failure to train caused the constitutional violation." *Id*. at 549.

In the case at hand, plaintiff alleges police officers in the Hammond Police Department do not receive adequate training on the use of firearms. (DE # 43 at 11.) She

9

continues, "[a]pparently, the policy of the Hammond Police Department is to leave it to the individual[] officer's discretion as to when to use deadly force." (*Id*.)

To support this policy allegation, plaintiff cites portions of Officer Michael Elkmann's deposition where he testified that officers do not receive training on when to *draw* their firearms, and that such a decision is left up to the individual officer's discretion. (DE # 42-4 at 15–16.) However, despite the evidence of a lack of training regarding drawing firearms, the evidence before the court demonstrates Hammond Police officers are trained regarding when to *use* their firearms to inflict deadly force. Although not cited by plaintiff, Elkmann stated that in his firearms training, he was trained to shoot "to stop a forcible felony from occurring and prevent serious bodily harm or death to myself or someone else." (*Id*. at 35–36.) However, the ultimate determination of when to use force to stop such a felony or harm is left up to the officer's discretion. (*Id*. at 36.)

The undisputed evidence in the record does not support plaintiff's argument that Hammond Police officers received no training on the use of firearms or that the use of deadly force is completely up to the discretion of the officers. Given Elkmann's statement, he did receive training and guidelines on when to shoot his weapon, which limited his discretion to some extent. Furthermore, courts find it acceptable that officers are given some discretion in deciding when to use deadly force. The Seventh Circuit has written "we remain cognizant of the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly

10

evolving—about the amount of force that is necessary in a particular situation." *Abbot v. Sangamon County, Ill.*, 705 F.3d 706, 724 (7th Cir. 2013) (internal quotation marks omitted). "As a result, we give considerable leeway to law enforcement officers' assessments about the appropriate use of force in dangerous situations." *Id*. at 724–25 (internal quotation marks omitted).

Plaintiff also highlights Elkmann's statement that he did not receive training for the "exact circumstances" which occurred on the night he shot John Edward Brown, II. (DE # 42-4 at 35.) However, he immediately clarified that he had been trained on how to act in "similar circumstances" (*id*.), and it cannot be expected that a police officer could be trained how to act in every possible set of circumstances. Moreover, "[a] Monell failure-to-train plaintiff must do more than demonstrate that an 'injury or accident could have been avoided if an officer had had better or more training, sufficient to equip him to avoid the particular injury causing conduct,' since even adequately trained officers make mistakes." *Young v. Village of Romeoville*, No. 10 C 1737, 2011 WL 1575512, *4 (N.D. Ill. April 27, 2011) (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 391 (1989)).

Instead, to satisfy § 1983, a municipality's failure to train its employees must amount to "deliberate indifference to the rights of persons with whom the [untrained employees] come into contact." *City of Canton*, 489 U.S. at 388. Only then "can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." *Id*. at 389. As the Supreme Court recognized in *Bd. of County Com'rs of Bryan*

*County, Okl. v. Brown*, 520 U.S. 397, 410 (1997), "'deliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious risk of his action." Thus, when city policymakers are on notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program. *Id*. at 407. A less stringent standard for a failure-to-train claim "would result in *de facto respondeat superior* liability on municipalities." *Canton*, 489 U.S. at 392.

That is why "[a] pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick v. Thompson*, 563 U.S. 51, 62 (2011). The City's continued adherence to an approach that they know or should know has failed to prevent constitutional violations may establish the "deliberate indifference" necessary to trigger liability. *Id.* at 62–63. For "[w]ithout notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Id*.

Here, plaintiff has not presented evidence of a pattern of similar constitutional violations. Nor has she presented any evidence of an awareness on the part of the City that—by training its officers as it did—it was creating constitutional violations.

Instead, plaintiff seems to rely on the supposition that by allowing officers some discretion in using their firearms, and by not training them in the exact circumstances of

this case, there must be some actionable failure on the part of the City because the risk of constitutional violations was obvious. However, plaintiff's evidence alone is not enough to demonstrate that a municipal actor disregarded a known or obvious risk. For the reasons stated above, some discretion is allowed when officers encounter changing circumstances. Allowing officers leeway to adapt to their individual situations does not create an obvious risk of constitutional violations.

Therefore, the court finds there is no genuine issue of fact for trial and that plaintiff has failed to provide support for this claim. Summary judgment is appropriate in the City Defendants' favor on this issue, and the claim for failure to train or supervise is dismissed.

### D. *Wrongful Death*

Given the court's decisions above, the sole remaining claim in this case is the wrongful death claim under Indiana law. Plaintiff brings this claim against the Doe Defendants in both their individual capacities and their official capacities as agents for the City. (*See* DE # 1 at 14.) Although the Doe Defendants have been dismissed from the case, the official capacity claim against them survives because it is treated as a claim against the City. *See Kentucky v. Graham*, 473 U.S. 159, 165–66 (1986).

Pursuant to 28 U.S.C. § 1367(a), the court originally had supplemental jurisdiction over the wrongful death state-law claim. But now, all federal claims have been dismissed from the case. The supplemental jurisdiction statute provides that the district court "may decline to exercise supplemental jurisdiction" over state-law claims

if the court "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). The court has broad discretion in making this decision. *RWJ Mgmt. Co., Inc. v. BP Prods. N. Am., Inc.*, 672 F.3d 476, 478 (7th Cir. 2012) ("When federal claims drop out of the case, leaving only state-law claims, the district court has broad discretion to decide whether to keep the case or relinquish supplemental jurisdiction over the state-law claims."). Furthermore, there is a "presumption" that courts will relinquish jurisdiction over supplemental state-law claims where the federal claims drop out of the case. *Id*. at 479. "The presumption is rebuttable, but it should not be lightly abandoned, as it is based on a legitimate and substantial concern with minimizing federal intrusion into areas of purely state law." *Id.*

The Seventh Circuit has identified three situations that may displace the presumption, namely:

> (1) the statute of limitations has run on the pendent claim, precluding the filing of a separate suit in state court; (2) substantial judicial resources have already been committed, so that sending the case to another court will cause a substantial duplication of effort; or (3) when it is absolutely clear how the pendent claims can be decided.

*Sharp Elecs. Corp v. Metro. Life Ins. Co.*, 578 F.3d 505, 514–15 (7th Cir. 2009).

Regarding the first exception, plaintiff is not precluded from filing a separate suit. Plaintiff may refile the action in state court pursuant to 28 U.S.C. § 1367(d) and Indiana Code § 34-11-8-1.

Regarding the second exception, the court has devoted few judicial resources to resolving the wrongful death claim. Excluding discovery orders and other procedural

14

orders, the court has previously issued only one substantive order in this case. In that order, the court denied the City Defendants' motion to dismiss. (DE # 10.) That motion challenged plaintiff's failure to train claim against the City Defendants, and not the wrongful death claim. Therefore, the court has not yet examined the merits of the state-law claim. *See RWJ Mgmt. Co., Inc.*, 672 F.3d at 481 (affirming relinquishment of jurisdiction where "the extensive pretrial activity was largely attributable to discovery disputes, not the merits of the state-law claims").

The small amount of resources devoted to this case is unlike the efforts expended in *Miller Aviation v. Milwaukee County Board of Supervisors*, 273 F.3d 722 (7th Cir. 2001), in which the Seventh Circuit reversed a district court's decision to relinquish jurisdiction where the lower court had held 9 hearings and issued 19 orders, including a 71-page decision. The court has expended relatively few judicial resources, and therefore, there will be no substantial duplication of efforts.

Additionally, the court is not required to retain jurisdiction due to the length of time this case has been under its jurisdiction. Although this case was filed over two years ago, the Seventh Circuit has upheld an order relinquishing jurisdiction "just before trial after five years of discovery." *Olive Can Co., Inc. v. Martin*, 906 F.2d 1147, 1153 (7th Cir. 1990). Moreover, the question of whether or not to retain supplemental jurisdiction did not arise until the federal claims were dismissed, earlier in this order.

For these reasons, the court concludes that the second exception to the presumption does not apply. This is not a relinquishment that would "clearly

disserve[ ]" judicial economy. *See Williams Elecs. Games, Inc. v. Garrity*, 479 F. 3d 904, 906 (7th Cir. 2007).

As to the third exception, the court notes, again, that it has not yet addressed the merits of the state-law claim, and therefore it is not absolutely clear to this court how the claim will be decided. In their motion for summary judgment, the City Defendants ask the court to reach the merits of the wrongful death claim and to dismiss the claim based on the state-law doctrine of contributory negligence. (DE # 34 at 11.) In making this argument, they also ask the court to conclude that plaintiff has violated the Indiana penal code, in order to find negligence per se. (*Id.*) Such determinations require an understanding of Indiana state law that is more likely to be found in an Indiana state court with relative expertise in those areas. Therefore, the third exception to the presumption does not apply.

For the foregoing reasons, the court finds no reason to rebut the presumption of relinquishment of jurisdiction.

### IV. CONCLUSION

For the foregoing reasons, the court

(1) **GRANTS** the Doe Defendants' motion for summary judgment (DE # 35);

(2) **GRANTS in part** the City Defendants' motion for summary judgment (DE # 33) on the claims for unreasonable seizure, excessive force, and failure to train or supervise;

(3) **DECLINES** to exercise jurisdiction over the remaining state law claim; and,

16

(4) **DISMISSES** the remaining claim for lack of jurisdiction.

**SO ORDERED.**

Date: September 26, 2018

s/James T. Moody

JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT